COURT OF APPEALS OF VIRGINIA

Present: Judges Russell, AtLee and Senior Judge Haley

UNPUBLISHED

KAREN JUETTA ROEBUCK

v.      Record No. 0667-20-3

LYNCHBURG DEPARTMENT
 OF SOCIAL SERVICES

MEMORANDUM OPINION[*]
PER CURIAM
NOVEMBER 4, 2020

FROM THE CIRCUIT COURT OF THE CITY OF LYNCHBURG
F. Patrick Yeatts, Judge

(Herbert E. Taylor, III, on brief), for appellant.

(Susan L. Hartman, Assistant City Attorney; P. Scott DeBruin,
Guardian *ad litem* for the minor child, on brief), for appellee.


Karen Juetta Roebuck (mother) appeals the order terminating her parental rights to her child

and approving the foster care goal of adoption. Mother argues that the circuit court erred in

terminating her parental rights because "the evidence was insufficient to prove . . . that the

termination in this case was warranted" and that the Lynchburg Department of Social Services (the

Department) "failed to make reasonable efforts to provide services to [mother] to remedy the

conditions which brought the child into foster care." Mother also asserts that the circuit court erred

by approving the foster care goal of adoption. Upon reviewing the record and briefs of the parties,

we conclude that this appeal is without merit. Accordingly, we summarily affirm the decision of

the circuit court. See Rule 5A:27.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND[1]

"On appeal from the termination of parental rights, this Court is required to review the evidence in the light most favorable to the party prevailing in the circuit court." Yafi v. Stafford Dep't of Soc. Servs., 69 Va. App. 539, 550-51 (2018) (quoting Thach v. Arlington Cnty. Dep't of Hum. Servs., 63 Va. App. 157, 168 (2014)).

Mother is the biological parent to the child who is the subject of this appeal.[2] On September 9, 2005, the then-one-year-old child entered foster care due to concerns about mother's mental health. The Lynchburg Juvenile and Domestic Relations District Court (the JDR court) subsequently transferred custody of the child to mother's sister. The child lived with mother's sister for eight years until mother regained custody.

On June 29, 2018, mother went to the Department and asked that the child, who was then thirteen years old, be placed in a stable home because mother felt "overwhelmed" and unable to care for the child. Mother told the Department that she had been diagnosed with mood disorder and clinical depression, which were affecting her ability to parent the child. The Department reviewed several options with mother, including opening a foster care prevention case.[3] Mother refused the services and signed an entrustment agreement that allowed for voluntary termination of her parental

---

[1] The record in this case was sealed. Nevertheless, the appeal necessitates unsealing relevant portions of the record to resolve the issues appellant has raised. Evidence and factual findings below that are necessary to address the assignments of error are included in this opinion. Consequently, "[t]o the extent that this opinion mentions facts found in the sealed record, we unseal only those specific facts, finding them relevant to the decision in this case. The remainder of the previously sealed record remains sealed." Levick v. MacDougall, 294 Va. 283, 288 n.1 (2017).

[2] On May 26, 2006, the Lynchburg Juvenile and Domestic Relations District Court terminated the parental rights of the child's father. Mother has other children who are not the subject of this appeal; they do not live with her.

[3] Mother had hoped that her sister could care for the child again; however, mother's sister was unable to care for the child.

- 2 -

rights; however, she later revoked the agreement and asked the Department to provide her with services.

The Department referred mother for a psychological evaluation, outpatient counseling, substance abuse assessment, parent coaching, and parenting classes. Mother refused to participate in the psychological evaluation and instead referred the Department to evaluations conducted in 2005. The Department, however, wanted an assessment of mother's current mental health status, so it could help her obtain "any services that she may need to improve her mental health and parenting"; mother refused to participate in an evaluation. Mother completed a substance abuse assessment; the evaluator did not recommend substance abuse treatment but did recommend outpatient therapy and parenting classes. Mother completed the parenting classes. She refused to sign releases for the Department to speak with her counselor at Community Access Network. In November 2018, the Department referred mother to Brandi Stinnett, who provided counseling and parenting services. Stinnett worked with mother on communication skills, as well as skills to decrease her anxiety, impulsivity behaviors, and stress.

In addition, the Department arranged for mother to visit weekly with the child. According to the social worker, mother was "always" late to the visits and spoke with the child about "inappropriate" matters. For example, during one visit, the child stated that she wanted to be adopted, and mother responded by stating that she wanted the child returned to her care so that she would not lose her housing or food stamps. During a visit on February 11, 2019, the child repeated her desire to be adopted, and mother told her that nobody would adopt her because she was too old. When the child became visibly upset, the Department ended the visit and removed the child from the visitation room. Thereafter, the Department suspended mother's visits until she could meet with Stinnett and understand how her words and actions were hurtful to the child.

Mother sent numerous emails to the Department and vacillated about her willingness to cooperate. By June 6, 2019, Stinnett and the Department agreed that mother was ready to resume visits with the child. The Department scheduled a visit for June 10, 2019, but mother did not appear and texted Ms. Stinnett that she "had a lot of anxiety and wouldn't be attending the visit." No further visits were scheduled.

The Department subsequently filed a petition for a permanency planning hearing with a foster care goal of adoption and a petition to terminate mother's parental rights. The Department remained concerned about mother's mental health and the fact that mother reported that she was not taking her prescribed medications. On July 11, 2019, the JDR court approved the foster care goal of adoption and terminated mother's parental rights. Mother appealed the JDR court's rulings to the circuit court.

On February 27, 2020, the parties appeared before the circuit court. The Department introduced into evidence a letter written by mother on June 29, 2018, stating she had a mood disorder and clinical depression and that the child needed "a stable environment." The Department presented evidence that mother had "significant untreated mental health issues" and had not been compliant with mental health services offered to her. Moreover, the Department explained that mother was court-ordered to participate in a psychological evaluation, but she refused to do so.

Stinnett testified that mother had made progress in certain areas, but in other areas, she "would take a step forward and another step back." Stinnett stated that she and mother made progress in building a therapeutic relationship, and mother made progress in securing housing. Stinnett further explained that mother "did a really good job of being able to state some things that would help her with anxiety and would help her with improving her communication skills." Mother's impulsivity, however, "would often get in the way," and she would act impulsively, instead of implementing her plan. Stinnett testified that a current psychological evaluation "would

have definitely been helpful." Stinnett opined that it would be "volatile" if the child were returned to mother's custody because mother's mental health had been "so up and down" and the child had been "so insistent in not returning to the home."

The Department presented evidence that the child was doing well in foster care. The child's therapist testified that she had worked with the child for eight months on being in foster care, her relationship with her mother, and her "depressed mood and anger issues."[4] The child had "a real close relationship" with her foster mother and had told her therapist that she wanted to "move on and be adopted" by her foster mother.

Mother testified about her current situation. In April 2019, she had moved to a new residence that was in a safer area than where she had lived when the child entered foster care. Mother stated that she received social security and disability payments because of her anxiety; however, she intended to start a new factory job the week following the circuit court hearing. Mother further testified that her anxiety was "mostly under control" with her prescribed medication, counseling, and group therapy.

Mother explained that when the child entered foster care, mother was working a job that "really stressed [her] out," and as a result, she "took a lot of things out" on the child. Mother testified that she went to the Department in June 2018, out of concern for the child's safety. Mother, however, now claimed that her job had "triggered the anxiety, the depression, [and] the lack of sleep" that led to her bringing the child to the Department and that her mental health was "not the problem."

Mother admitted that she did not complete a psychological evaluation. Mother explained that she did not want to see the psychologist who evaluated her in 2005, so the Department referred her to another doctor. Mother testified that she had "scheduling conflicts" with the second

---

[4] The child's therapist had not met with mother.

psychologist. When mother went to the third psychologist for the evaluation, she refused to sign the consent forms giving the Department access to all her information; therefore, the evaluation was not done. Mother thought that she was "under constant attack and abuse" from the social workers, so she did not want to sign the release forms.

After hearing the evidence and arguments, the circuit court found that mother brought the child to the Department because mother had a "mental illness" and needed help. The circuit court further found that mother refused to cooperate with the psychological evaluation, which was necessary for the court to understand her mental health situation and determine whether the child could be safely returned to her. The circuit court concluded that the child needed "a chance to have some normalcy." Accordingly, the circuit court held that it was in the child's best interests to terminate mother's parental rights and approve the foster care goal of adoption. On April 17, 2020, the circuit court entered an order memorializing its rulings. This appeal followed.

ANALYSIS

"On review, '[a] trial court is presumed to have thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'" Castillo v. Loudoun Cnty. Dep't of Fam. Servs., 68 Va. App. 547, 558 (2018) (quoting Logan v. Fairfax Cnty. Dep't of Hum. Dev., 13 Va. App. 123, 128 (1991)). "Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Fauquier Cnty. Dep't of Soc. Servs. v. Ridgeway, 59 Va. App. 185, 190 (2011) (quoting Martin v. Pittsylvania Cnty. Dep't of Soc. Servs., 3 Va. App. 15, 20 (1986)).

The circuit court terminated mother's parental rights under Code § 16.1-283(B) and (C)(2). Mother argues that the circuit court erred in finding that there was clear and convincing evidence to support the termination of her parental rights. Mother acknowledges that her refusal to cooperate

with the psychological evaluation was "problematic" throughout the case. Mother stresses that she "never harmed" the child or "put [her] in danger." Mother emphasizes that she "worked diligently to improve herself" by obtaining new housing and a new job, participating in counseling and taking her prescribed medications, and completing parenting classes. Mother contends that she was "stable" and addressing her "mental health issues with the assistance of her counselors and other medical professionals"; therefore, she asserts that she was able to care for the child.

Code § 16.1-283(C)(2) states that a court may terminate parental rights if:

> The parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed 12 months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

"[S]ubsection C termination decisions hinge not so much on the magnitude of the problem that created the original danger to the child, but on the demonstrated failure of the parent to make reasonable changes." Yafi, 69 Va. App. at 552 (quoting Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 271 (2005)).

Mother argued that the Department "failed to make reasonable efforts to provide services to [her] to remedy the conditions which brought the child into foster care." "'Reasonable and appropriate' efforts can only be judged with reference to the circumstances of a particular case. Thus, a court must determine what constitutes reasonable and appropriate efforts given the facts before the court." Harrison v. Tazewell Cnty. Dep't of Soc. Servs., 42 Va. App. 149, 163 (2004) (quoting Ferguson v. Stafford Cnty. Dep't of Soc. Servs., 14 Va. App. 333, 338 (1992)). The Department "is not required to force its services upon an unwilling or disinterested parent." Tackett v. Arlington Cnty. Dep't of Hum. Servs., 62 Va. App. 296, 323 (2013) (quoting Harris v. Lynchburg Div. of Soc. Servs., 223 Va. 235, 243 (1982)); see also Logan, 13 Va. App. at 130.

The Department provided mother with numerous services, including referrals for counseling, parenting coach, parenting classes, substance abuse assessment, and a psychological evaluation. The social worker testified that the psychological evaluation was necessary to determine what additional services were needed to improve mother's mental health and parenting. The Department repeatedly told mother that she needed a psychological evaluation and was court-ordered to participate in the evaluation. The Department worked with mother and referred her to three different psychologists; however, mother refused to cooperate. The circuit court told mother, "What I needed to see was a psychological evaluation that told me what you're suffering from and whether or not you could parent." The circuit court explained that it had "no idea exactly what the extent of [her] diagnosis [was] . . . ." The circuit court found that mother had "been given ample opportunity to . . . get it done," but she did not do so. The child entered foster care because of concerns about mother's mental health. Mother did not substantially remedy the conditions that led to the child's placement in foster care because she did not cooperate with the psychological evaluation.

At the time of the circuit court hearing, the child was fifteen years old and had been in foster care for approximately twenty months. Once mother decided to revoke the entrustment agreement and asked the Department to provide her with services, the Department informed mother that she needed to participate in a psychological evaluation. Mother, however, refused to cooperate, which prevented the circuit court from being able to determine whether mother could care for the child. The circuit court found that the child needed "some consistency" and "a chance to have some normalcy." The circuit court concluded that it was "not fair that this has been going on as long as it has." "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Tackett, 62 Va. App. at 322 (quoting Kaywood v. Halifax Cnty. Dep't of Soc. Servs., 10

- 8 -

Va. App. 535, 540 (1990)). Considering the totality of the evidence, the circuit court did not err in terminating mother's parental rights under Code § 16.1-283(C)(2) and finding that it was in the best interests of the child to do so.

"When a trial court's judgment is made on alternative grounds, we need only consider whether any one of the alternatives is sufficient to sustain the judgment of the trial court, and if so, we need not address the other grounds." Kilby v. Culpeper Cnty. Dep't of Soc. Servs., 55 Va. App. 106, 108 n.1 (2009); see also Fields v. Dinwiddie Cnty. Dep't of Soc. Servs., 46 Va. App. 1, 8 (2005) (the Court affirmed termination of parental rights under one subsection of Code § 16.1-283 and did not need to address termination of parental rights pursuant to another subsection). Therefore, we do not need to consider whether the circuit court erred in terminating mother's parental rights pursuant to Code § 16.1-283(B).

With respect to mother's challenge of the foster care goal of adoption, "[o]ur decision to affirm the termination order necessarily subsumes this aspect of [her] appeal because a preponderance-of-the-evidence standard governs judicial modifications of foster care plans." Toms, 46 Va. App. at 265 n.3.

CONCLUSION

For the foregoing reasons, the circuit court's ruling is summarily affirmed. Rule 5A:27.

Affirmed.